# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 280 | **DATE** | 9/23/2003 |
| **CASE TITLE** | Tony Jones Apparel, Inc. vs. Indigo USA LLC, Indigo USA, Ltd., et | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiff's motion for partial summary judgment as to the Corporate Defendants' liability on Counts I, II, IV, V, and VI is hereby granted [24-1]. Plaintiff's motion for partial summary judgment on Count III is hereby denied. Status hearing set for 10/17/03 at 9:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 2 4 2003 | |
| | Notified counsel by telephone. | | date docketed | 32 |
| ✓ | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 03 SEP 24 AM 8:25 | date mailed notice | |
| TBK | courtroom deputy's initials | FILED FOR DOCKETING Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT O ILLINOIS
EASTERN DIVISION



DOCKETED
SEP 2 4 2003

TONY JONES APPAREL, INC., )
)
                     Plaintiff, )    CASE NO. 03 C 0280
v.                             )    Judge Ronald A. Guzman
)
INDIGO USA LLC, INDIGO USA, LTD. )
Hae, Kim and John Does 1-5, )
                      Defendants. )

## MEMORANDUM OPINION AND ORDER

Pending is Plaintiff Tony Jones Apparel, Inc.'s motion for partial summary judgment as to the liability of Indigo USA LLC and Indigo USA LTD (collectively "Corporate Defendants"), pursuant to Fed. R. Civ. Pro. 56. For the reasons set forth below this motion is hereby granted for Counts I, II, IV, V, and VI, and denied for Count III.

## BACKGROUND FACTS

This matter arises out of the defendants' unauthorized distribution of men's velour track suits bearing Plaintiff's trademarks. Plaintiff is a New Jersey corporation that advertises, markets, and sells wholesale apparel to retailers and distributors. (Compl., ¶¶ 5, 6). Corporate Defendant Indigo USA LLC is a now-defunct Illinois limited liability company. (Pl.'s L.R. 56.1(a), ¶ 2). Corporate Defendant Indigo USA LTD, for whom Defendant Hae Kim is the sole officer and shareholder, is an Illinois corporation with its principal place of business in Buffalo Grove, Illinois. (Pl.'s L.R. 56.1(a), ¶ 3). Indigo USA LTD has been in the business of selling wholesale merchandise, including apparel, since December 2000. (Pl.'s L.R. 56.1(a), ¶ 4).

1

32

Since 1997, Plaintiff has sold a line of apparel, footwear, bags, and accessories under the federally registered trademark CLENCH. (Pl.'s L.R. 56.1(a), ¶ 8). Plaintiff owns a federal registration for the trademark CLENCH for several classes of goods, under Registration Number 2,243,323, which was registered in the United States Patent and Trademark Office on May 4, 1999. (Pl.'s L.R. 56.1(a), ¶ 9). The CLENCH mark is registered for eyeglasses; sunglasses; bags; and men's, women's, and children's sportswear. (Pl.'s L.R. 56.1(a), ¶ 10). Corporate Defendants admit that the existence of Plaintiff's Registration for the CLENCH mark places them on constructive notice of Plaintiff's rights in the mark. (Pl.'s L.R. 56.1(a), ¶ 11).

In conjunction with the registered mark, Plaintiff uses a stylized version of the CLENCH mark, a lion's head logo, and a hang tag bearing the lion's head logo and a distinctive tan and brown grid design. (Pl.'s L.R. 56.1(a), ¶¶ 12-14). Since 1996, Plaintiff has advertised, marketed, and sold CLENCH goods at wholesale to retailers and distributors and through in-person and catalog sales throughout the United States. (Pl.'s L.R. 56.1(a), ¶¶ 16, 17). Plaintiff has sold over $45 million worth of CLENCH goods and has spent over $1 million in advertising and marketing since 1996. (Pl.'s L.R. 56.1(a), ¶ 15).

In September 2002, Corporate Defendants purchased 2,040 sets of men's velour track suits bearing marks either virtually identical to or substantially indistinguishable from Plaintiff's CLENCH line. (Pl.'s L.R. 56.1(a), ¶ 20). Corporate Defendants purchased the counterfeit goods from S & L Trading in Seoul, Korea, which is not authorized by Plaintiff to sell or facilitate the sale of CLENCH goods to any person or entity in the United States other than Plaintiff. (Pl.'s L.R. 56.1(a), ¶ 22). All goods

bearing the CLENCH trademarks are initially imported into the United States by Plaintiff for further distribution. (Pl.'s L.R. 56.1(a), ¶ 23).

During December 2002, Corporate Defendants resold over 100 sets of the CLENCH track suits to three retailers for a combined total of $13,320. (Pl.'s L.R. 56.1(a), ¶¶ 24-26). Plaintiff discovered Corporate Defendants' unauthorized use of the CLENCH trademarks that same month, when a customer informed Plaintiff by telephone that potentially counterfeit CLENCH goods were in the marketplace. (Pl.'s L.R. 56.1(a), ¶ 31).

Plaintiff's executive director contacted Corporate Defendants in December 2002 and demanded that they cease the illegal distribution of goods bearing CLENCH trademarks. (Pl.'s L.R. 56.1(a), ¶ 32). After receiving no response to this initial demand, Plaintiff's counsel sent a "cease and desist letter" to Corporate Defendants on December 16, 2002. (Compl., ¶ 33). After again receiving no response, Plaintiff filed a six-count complaint in the Northern District of Illinois, Eastern Division on January 14, 2003. The complaint seeks injunctive relief, damages, and costs for trademark infringement, unfair competition under the Lanham Act, trafficking in counterfeit goods, common law trademark infringement, common law unfair competition, and deceptive trade practices. (Compl., ¶¶ 1, 37-63). On April 29, 2003, pursuant to a Request for Permission to Enter onto the Premises of Corporate Defendants, Plaintiff's representatives visited two of Defendants' business premises, where they observed, photographed, and videotaped individual garments and shipping cartons bearing the CLENCH marks. (Pl.'s L.R. 56.1(a), ¶¶ 27-30). The only goods at issue for Plaintiff's partial summary judgment motion are the men's velour track suits.

## DISCUSSION

Plaintiff has brought a motion for summary judgment on the issue of Corporate Defendants' liability on all counts of the complaint, specifically regarding the velour track suits imported and resold by Corporate Defendants, which bear marks identical or virtually identical to Plaintiff's federally registered and common law CLENCH marks.

Rule 56 of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted by the district court if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The initial responsibility rests on the moving party to demonstrate why it believes there is no dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing the motion must then set forth specific facts showing that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Bare allegations not supported by specific facts are insufficient to resist a motion for summary judgment. *Id.* at 248.

To determine whether a genuine issue of material fact exists, the court does not weigh the evidence or determine the truth of the matters asserted. *Id.* at 249. Instead, the court "must view the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the nonmoving party." *Baron v. City of Highland Park*, 195 F.3d 333, 337 (7th Cir. 1999). Material facts are those facts "that might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute concerning material facts is genuine if a reasonable jury could return a verdict for the nonmoving party. *Id.* To date the Corporate Defendants have failed to file any type of response to Plaintiff's partial motion for summary judgment. Thus, the facts set forth in Plaintiff's 56.1 statement are accepted as true to the

extent the record supports such.

## A. Count I-Federal Trademark Infringement

In order to succeed on a federal trademark infringement claim under the Lanham Act, a plaintiff must show that it has a protected trademark and that the challenged mark is likely to cause confusion among consumers. *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Plaintiff has introduced evidence that its CLENCH mark is federally registered, and Corporate Defendants admit that the existence of the trademark's registration places them on constructive notice of Plaintiff's rights in the mark. (Pl.'s L.R. 56.1(a), ¶ 11). Thus, Plaintiff has met its burden of proving the first element of federal trademark infringement. *See Polo Fashions, Inc. v. Clothes Encounters*, 1985 WL 96, *3 (N.D. Ill. 1985) (holding that the first element of federal trademark infringement was satisfied when the plaintiff introduced evidence of registration and the defendant conceded that the plaintiff owned the registrations at issue). Where, as here, there are no facts in dispute as to the existence of a protectable mark, it is appropriate for the court to determine the remaining issue of whether the challenged mark is likely to cause confusion among consumers. *Joujou Designs, Inc. v. Jojo Ligne Internationale, Inc.*, 821 F. Supp. 1347, 1352 (N.D. Cal. 1992).

In order to assess the likelihood of confusion, the Seventh Circuit applies a seven factor test. *Barbecue Marx, Inc.*, 235 F.3d at 1043-44. The seven factors that comprise the test are: (1) the strength of the trademark owner's mark; (2) the similarity of the marks in appearance and suggestion; (3) the similarity of the goods; (4) any evidence of actual confusion; (5) the area and manner of concurrent use of the goods; (6) the degree of care likely to be exercised by the purchaser; and (7) the defendant's intent. *Eli Lilly &*

*Co. v. Natural Answers*, 233 F.3d 456, 461-62 (7th Cir. 2000). The proper weight given to each of these factors varies from case to case. *Id.* at 462. In addition, although no single factor is dispositive, "the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the most important considerations." *Id.*

*1. Strength of the Trademark Owner's Mark*

As applied to trademarks, the term 'strength' refers to the distinctiveness of the mark, or its tendency to identify the goods sold under the mark as emanating from a particular source. *Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001). Marks are classified according to five categories of increasing distinctiveness: generic, descriptive, suggestive, arbitrary, and fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). A strong mark is one that is used only in an arbitrary or fanciful manner in terms of the goods it seeks to sell. *Joujou Designs, Inc.*, 821 F. Supp. at 1353. By contrast, a weak mark uses words that are meaningful in everyday usage or are merely suggestive of the goods. *Id.* In order to analyze the strength of a mark, courts consider its inherent distinctiveness, the duration of its use, the volume of products sold bearing the mark, and the amount of advertising expenditures devoted to the mark. *Id.*

The word "clench" is a verb that does not describe or suggest clothing. Thus, Plaintiff's application of the CLENCH mark to a line of clothing is inherently distinctive, because the mark is used in an arbitrary and fanciful manner. *See id.* (holding that the application of a French word meaning "toy" to a line of clothing was not descriptive and thus was arbitrary and fanciful). Further, Plaintiff has used the CLENCH mark since 1996. In that same time period, the CLENCH line has generated over $45 million in

sales, and Plaintiff has spent approximately $1 million in advertising and marketing expenditures. The substantial nature of Plaintiff's expenditures and profits, in conjunction with the distinctive nature of the CLENCH mark, constitutes evidence of strength, thereby entitling Plaintiff to protection from infringement. *See id.* (finding a strong mark entitled to broad protection where a plaintiff spent $7 million on advertising and generated $300 million in profits with its distinctive mark over a fifteen-year period).

*2. Similarity of the Marks in Appearance and Suggestion*

When the parties' goods move through the same or similar channels of trade, involve the same or overlapping classes of purchasers, and are closely related as a result of similar packaging and commercial appeal, it is highly likely that similarity between their marks will be found. *Id.* at 1354. The CLENCH marks used by Corporate Defendants are identical to Plaintiff's federally registered CLENCH mark. In addition, the goods in question are men's velour track suits, which are identical or virtually identical to apparel sold by Plaintiff under its CLENCH line. As a result, the goods involve the same class of purchasers. Further, both Plaintiff and Corporate Defendants offer their products wholesale and through retailers, which supports a finding that their goods move through similar channels of trade. Finally, because the products distributed by Corporate Defendants are identical to Plaintiff's, they feature similar packaging and commercial appeal. Therefore, the marks in question are extremely similar, if not identical.

*3. Similarity of the Goods*

The issue in determining the similarity of the goods is whether the goods in

question are related in the minds of the public. *Trans Union LLC*, 142 F. Supp. 2d at 1042; *see also Natural Answers, Inc.*, 233 F.3d at 463 (noting that the inquiry is whether the goods are the kind that the public might attribute to a single source (i.e. the holder of the mark)). The infringing marks used by Corporate Defendants appear on men's sportswear, and one of the major classes of goods which bear Plaintiff's registered CLENCH mark is men's sportswear. Therefore, it is highly likely that consumers would attribute the goods to a single source.

### 4. Any Evidence of Actual Confusion

In order to prevail on the actual confusion element, a plaintiff must provide some evidence of actual confusion. *Barbecue Marx, Inc.*, 235 F.3d at 1045-46. However, the Seventh Circuit has made it clear that evidence of actual confusion is not essential. *Natural Answers, Inc.*, 233 F.3d at 465. Thus, Plaintiff's failure to introduce evidence of actual confusion is not fatal to an overall finding of a likelihood of confusion.

### 5. Area and Manner of Concurrent Use of the Goods

In order to satisfy this element, the parties must utilize the same marketing channels for their goods. *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1117 (7th Cir. 1997). Plaintiff and Corporate Defendants are in the same line of business, the wholesaling of sportswear and apparel. Moreover, both Plaintiff and Corporate Defendants sell their goods to wholesalers and distributors of apparel, which means that they are in direct competition. Accordingly, the area and manner of use of both parties' goods is concurrent.

### 6. Degree of Care Likely to be Exercised by the Purchaser

The standard to be applied for this element "is that of the typical buyer exercising

8

ordinary care." *Joujou Designs, Inc.*, 821 F. Supp. at 1355. Because the marks and the goods in question are virtually indistinguishable, it would require a great deal of care for wholesale purchasers and retail consumers to differentiate between the goods sold by Plaintiff and Corporate Defendants. Furthermore, the apparel is moderately priced, such that the average consumer may not spend a great deal of time and effort when making the decision to purchase. *See id.*, ("given the proximity of the products, such indiscriminate selection by purchasers would increase the likelihood of confusion between plaintiff's and defendant's goods").

### 7. Defendant's Intent

A finding of fraudulent intent or bad faith is not required to establish liability for trademark infringement. *Clothes Encounters*, 1985 WL 96 at *3. Where there is evidence to suggest that a defendant knowingly adopted a mark similar to another's, a court can presume that the defendant will accomplish a goal of deceiving the public. *Joujou Designs, Inc.*, 821 F. Supp. at 1355. All defendants answered Plaintiff's complaint but to date the Corporate Defendants have failed to file any response to Plaintiff's motion for summary judgment. The uncontested material fact that Corporate Defendants purchased and resold products bearing CLENCH marks identical to Plaintiff's registered mark raises a strong inference that they were attempting to "trade off" on Plaintiff's mark. *Id.*

In light of the fact that the seven factor test weighs overwhelmingly in favor of Plaintiff, the court concludes that Plaintiff has shown that the marks used by Defendants are substantially similar to the federally registered CLENCH mark, and that there is an overall likelihood of confusion. Therefore, Plaintiff's motion for partial summary judgment as to Defendants' liability on Count I is granted.

### B. Counts II (Unfair Competition under Lanham Act), IV (Illinois Common Law Trademark Infringement), V (Illinois Common Law Unfair Competition), and VI (Violation of Illinois Deceptive Business Practices Act)

The same analysis that applies to federal trademark infringement is used in assessing the merits of Plaintiff's claims under Counts II, IV, V, and VI. *See Trans Union LLC*, 142 F. Supp. 2d at 1038 (holding that the analysis used for federal trademark infringement claims is the same analysis used for unfair competition claims under the Lanham Act, Illinois common law trademark infringement and unfair competition claims, and claims under the Illinois Consumer Fraud and Deceptive Business Practices Act); *see also Joujou Designs, Inc.*, 821 F. Supp. at 1353 (noting that the tests for federal trademark infringement, federal unfair competition, common law trademark infringement, and common law unfair competition are the same: "whether confusion is likely"). As a result, counts II, IV, V, and VI "share the same fate as count I." *Trans Union LLC*, 142 F. Supp. 2d at 1038. As discussed above, the undisputed facts of this case satisfy both elements of a claim for federal trademark infringement. Therefore, Plaintiff's motion for partial summary judgment as to Defendants' liability for Counts II, IV, V, and VI is granted.

### C. Count III-Trafficking in Counterfeit Goods

Count III of Plaintiff's complaint alleges that Defendants engaged in the trafficking of counterfeit goods in violation of §1114(1)(a) and (b) of the Lanham Act. However, this claim is duplicative of Plaintiff's claim for federal trademark infringement, which also falls under §1114(1)(a) and (b) of the Lanham Act. As discussed above, Plaintiff has satisfied the elements of a violation for federal trademark infringement under the Lanham Act. Therefore, Plaintiff's motion for partial summary judgment as to

10

Corporate Defendants' liability for Count III is denied.

## CONCLUSION

Plaintiff's motion for partial summary judgment as to the Corporate Defendants' liability on Counts I, II, IV, V, and VI is hereby granted [#24-1]. Plaintiff's motion for partial summary judgment on Count III is hereby denied.

9/23/03

So Ordered.    Entered: *Ronald A. Guzman*

**Ronald A. Guzman**
**United States Judge**